UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Board of Trustees of the Construction Industry and Laborers Health and Welfare Trust; Board of Trustees of the Construction Industry and Laborers Joint Pension Trust; Board of Trustees of the Construction Industry and Laborers Vacation Trust; Board of Trustees of the Southern Nevada Laborers Local 872 Training Trust,<br><br>    Plaintiffs<br>v.<br><br>Emmanuel Environmental, Inc.; and Romelle Emmanuel,<br><br>    Defendants | Case No. 2:23-cv-01704-JAD-MDC<br><br>**Order Directing Entry of Final Judgment and Closing Case**<br><br>ECF Nos. 15, 17, 18, 20, 21 |

The plaintiffs are employee-benefit trust funds that provide benefits to employees who perform work that is covered by various construction-industry collective bargaining agreements (CBAs). Defendant Emmanuel Environmental Inc. is subject to such an agreement, which required the company to make timely contributions to the Trust Funds on behalf of each employee performing work covered by the CBA. The company fell behind on its payments and its principal, Romelle Emmanuel, entered into a settlement agreement with the Trust Funds and executed a Stipulated/Consent Judgment, which Romelle personally guaranteed.[1] When they failed to make the required payments under

---

[1] ECF No. 1.

1

the settlement agreement, the Trust Funds filed suit against both Romelle and his company for ERISA violations and sought to enforce the consent judgment.[2]

Default was eventually entered against the company, and Romelle stopped responding to this litigation. He neither appeared for his deposition nor responded to requests for admissions. On December 2, 2024, the Trust Funds filed a motion for summary judgment on their claims against Romelle.[3] He responded with a two-page motion to dismiss,[4] which the Trust Funds move to strike as untimely.[5] While all of those motions were pending, the Trust Funds sought—and obtained from the Clerk of Court—a default judgment against the company for $142,989.00.[6] But because the Trust Funds weren't seeking a sum certain (their ask included a large chunk of attorneys' fees), they ask this court to strike the clerk's perfunctory default judgment and reconsider their motion and attorneys' fees request in a proper order.[7]

I deny Romelle's pro se motion to dismiss as untimely and unsupported, but I also liberally construe it as his response to the summary-judgment motion. Unfortunately, it falls far short of demonstrating a genuine issue of fact, so I grant summary judgment against him and in favor of the Trust Funds and deny as moot the motion to strike. I then

---

[2] Case No. 2:23-cv-1774-APG-MDC, consolidated into this one.
[3] ECF No. 15.
[4] ECF No. 17.
[5] ECF No. 18.
[6] ECF No. 20.
[7] ECF No. 21.

grant the motion to set aside the clerk's entry of default judgment against the company, revive the motion for default judgment, grant it, enter final judgment against Romelle and his company jointly and severally in the amount of $90,653.84, and close this case.

## Discussion

**A.     Romelle Emmanuel's Motion to Dismiss Is Untimely and Unsupported.**

Rule 12(b) of the Federal Rules of Civil Procedure (FRCP) sets a deadline for filing a motion to dismiss that challenges the legal or factual basis for a lawsuit. That rule prohibits a defendant from filing such a motion after he answers the complaint.[8] Romelle answered the Trust Funds' complaint in this consolidated action on April 5, 2024.[9] His motion to dismiss wasn't filed until eight months later,[10] so it is fatally untimely.

Even if the motion were timely, it fails for a separate reason: it is unsupported. This district's local rule 7-2(a) states that motions "must be supported by a memorandum of points and authorities." Romelle's two-page motion cites no authorities and consists of an unsigned (let alone unsworn) factual account of alleged misrepresentations.[11] Because this submission falls short of establishing a legal basis to dismiss the claims

---

[8] Fed. R. Civ. P. 12(b).
[9] ECF No. 12 in Case No. 2:23-cv-1774-APG-MDC.
[10] ECF No. 17.
[11] *Id.*

3

against Romelle, it is denied for that reason, too. And because I deny the motion to dismiss, I also deny as moot the Trust Funds' motion to strike it.[12]

**B.    The Trust Funds have shown that the are no genuine issues of material fact and that they are entitled to judgment against Romelle Emmanuel as a matter of law.**

There are two claims in this case. The first alleges a violation of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1145 against Emmanuel Environmental, Inc. only.[13] The second alleges that both the company and Romelle breached their settlement agreement, rendering them "liable to the Trust Funds for unpaid contributions, interest, liquidated damages, audit fees, and attorneys' fees, as outlined in the Settlement Agreement."[14] The Trust Funds move for summary judgment against Romelle, arguing that it has established the company's liability under ERISA—for which Romelle is individually responsible based on his personal guarantee.[15]

> ***1.    Summary judgment is appropriate when there are no genuine, material disputes about the facts and the movant is entitled to judgment as a matter of law.***

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16] "By its very terms, this standard provides that the

---

[12] ECF No. 18.
[13] ECF No. 1 in Case No. 2:23-cv-1774-APG-MDC.
[14] *Id*. at ¶ 26 (cleaned up).
[15] ECF No. 15.
[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[17] A fact is material if it could affect the outcome of the case.[18]

On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[19] When the parties moving for summary judgment bear the burden of proof, like the plaintiffs do here, they "must come forward with evidence [that] would entitle [them] to a directed verdict if the evidence went uncontroverted at trial."[20] If they do, the burden shifts to the nonmoving party—here, the defendant—who "must present significant probative evidence tending to support [his] claim or defense."[21] As FRCP 56(c)(1) explains, the defendant can't just rest upon allegations or argument; rather he must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or "show[] that the materials" that the moving party "cited do not establish the absence . . .

---

[17] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[18] *Id.* at 249.

[19] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[20] *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

[21] *Id.*

of a genuine dispute, or that" the movant "cannot produce admissible evidence to support the fact."

### 2. The record contains no genuine dispute about Romelle Emmanuel's liability for his company's ERISA violations.

The Trust Funds argue that Emmanuel Environmental, Inc. is liable for delinquencies during two separate periods of time. The first is its failure to make the required employee-benefit contributions to the funds (as required by the CBA known as the Master Labor Agreement between the Nevada Contractors Association and the Laborers International Union of North America No. 872[22]) for work performed in December 2022 and January 2023. The company acknowledged its liability for this $7,194.00 deficiency in a June 2023 settlement agreement, and it also agreed (1) to make $1,000 monthly payments until it was paid off and (2) to execute a stipulated consent judgment for that amount.[23] In that stipulated consent judgment, Romelle personally guaranteed the company's obligations, "agree[ing] to be jointly and severally personally liable for payment of this judgment in the event that [the company] defaults or otherwise fails to pay the amounts owed under" it.[24] The company made one monthly payment[25] but no more, so the Trust Funds filed the stipulated consent judgment to enforce it.[26]

---

[22] ECF Nos. 15-2 and 15-3.
[23] ECF No. 15-4.
[24] ECF No. 1 at ¶ 5.
[25] ECF No. 15-6.
[26] ECF No. 1.

A second date range of delinquencies was discovered by an audit conducted by the Trust Funds, which revealed that the company owed more than another $65,000 for unpaid contributions, interest, liquidated damages, attorney's fees, and audit fees for the period of March 15, 2022, to December 31, 2022.[27] A new settlement was then negotiated for Romelle to pay off the new, aggregate total of $85,331 in $10,000 monthly installments.[28] The first $10,000 check bounced,[29] and though Romelle promised that a replacement cashier's check was forthcoming, it never materialized.[30]

During discovery, the Trust Funds served upon Romelle a set of requests for admissions that he never responded to. His silence means that the following facts are deemed admitted:[31]

- Fringe benefit contributions for the company's employees were unpaid from March 15, 2022, through December 31, 2022, and also for the two work months of December 2022 and January 2023;

- The June 5, 2023, settlement agreement between the company and the Trust Funds, with Romelle acting as personal guarantor, was the settlement agreement that he signed on behalf of himself and the company;

- The payment obligations in the June 5, 2023, settlement agreement were not

---

[27] ECF No. 15-5.
[28] A second settlement agreement was drafted but not signed. ECF No. 15-9.
[29] ECF Nos. 5, 15-8.
[30] ECF No. 15-11.
[31] Fed. R. Civ. P. 36(a)(3).

satisfied; and

- Romelle was given the chance to review and correct the audit findings.[32]

In an action to enforce payment of delinquent contributions under a CBA, § 1132(g) of ERISA requires the court to award the plan the unpaid contributions, interest on them, attorney's fees, and liquidated damages.[33] The evidentiary submissions attached to the Trust Funds' motion for summary judgment—which include requests for admissions, emails, settlement agreements, checks, CBAs, and the declaration of Trust Funds counsel Christopher M. Humes, Esq., who attests to the authenticity of the exhibits and establishes this event timeline—demonstrate that they could establish through admissible evidence at trial that the company owes the Trust Funds the following amounts for the months of December 2022 and January 2023:

- $5,370 in unpaid employee benefit contributions;

- $1,566.08 in interest (based on the 14% simple-interest rate contained in the Trust Fund documents);[34] and

- liquidated damages in the amount of an additional $1,566.08,

---

[32] ECF No. 15-14.

[33] The language of 29 U.S.C. § 132(g)(2)(C) provides for an additional "amount equal to the greater of" the amount of interest on the unpaid contributions or liquidated damages in an amount not to exceed 20% of the unpaid contributions. Here, the interest amount ($1,529) exceeds a 20% liquidated-damages amount ($1,074), so it's the interest amount that controls this calculation.

[34] *See* 29 U.S.C. § 1132(g)(2)(B) (authorizing discretionary award of interest on delinquent contributions); *see also* ECF No. 15 at 9 (identifying the controlling documents). Interest is calculated from February 20, 2023, through March 21, 2025, at $2.06/day.

8

for a total of $8,502.16. But the Trust Funds have also shown that payments of $3,000 were made toward that sum,[35] so the total **amount due for the period of December 2022 and January 2023 is just $5,502.16.** The record also shows without dispute that Romelle personally guaranteed that he would cover these amounts owed by the company.[36]

That same proof establishes that the company failed to pay $49,887 in employee-benefit contributions for the period of March 15, 2022, through December 31, 2022.[37] This sum was confirmed by an audit,[38] and Romelle is deemed to have admitted that the independent auditor "worked with" him "to correct any errors in" that audit.[39] Fourteen percent interest on those delinquent contributions nets $15,505.34,[40] and again that interest amount exceeds a 20% liquidated-damages figure, so the Trust Funds are entitled to an additional award of $15,505.34, plus the cost of the audit, which was $4,254.[41] That brings the **total award for the period of March 15, 2022, through December 31, 2022, to $85,151.68.**

---

[35] $1,000 from Emmanuel Environmental, ECF No. 15-6, and $2,000 from one of its contractors, ECF No. 15-21.
[36] ECF No. 1.
[37] ECF No. 15-5.
[38] ECF No. 15-8.
[39] ECF No. 15-13 at 3 (RFA # 6).
[40] This is based on the figures in ECF No. 15 at 11, extended to March 21, 2025, at a rate of $19.13/day.
[41] ECF No. 15-9 at 2.

The record is less clear that Romelle personally guaranteed the amounts for this period because there is not a signed consent judgment that corresponds to it like there is for the December 2022 and January 2023 range. But the proof that the Trust Funds has presented establishes by a preponderance of the evidence that he so agreed. An email thread from November and December 2023[42] reflects that the Trust Funds had negotiated a with an Emmanuel Environmental, Inc. representative the settlement agreement attached as Exhibit 8 to the motion. That written agreement contains a signature block for Romelle to sign it on behalf of the company and states that "[t]he party signing this Agreement for [the company] agrees to personally guarantee and to be personally liable for payment of the debt . . . in the event [the company] defaults on any of its obligations hereunder."[43] The agreement required the company to pay off the debt in monthly installments of $10,000.[44] The company made one $10,000 payment, but the check "was returned for insufficient funds."[45] In a December 28, 2023, email, Romelle apologized and explained that he had money coming in but it "did not hit the account in time," and he promised, "[w]e will get you a cashier's check from the bank."[46] This conduct demonstrates that Romelle meant to be bound by the terms of this new settlement agreement, which included his personal guaranty.

---

[42] ECF No. 15-8.
[43] ECF No. 15-9 at ¶ 24.
[44] *Id*. at ¶ 5.
[45] ECF No. 15-11 at 3.
[46] *Id*. at 2.

1  Nothing in Romelle's motion to dismiss—which I liberally construe as his
2 opposition to the motion for summary judgment—establishes a genuine issue of fact to
3 defeat summary judgment.  In it, he recounts that he was wrongly told by "Harvey and
4 Rojelio at the Cracker Barrel"[47] that he could "perform a project as non-union if it's not
5 on the Las Vegas Strip."[48]  I take this as Romelle's assertion that he was under the
6 misimpression, based on a conversation with union representatives, that he didn't have to
7 make contributions to the Trust Funds for this work.

8  But just saying so at this juncture in the litigation is not enough.  FRCP 56
9 requires at the very least that factual assertions be contained in a sworn statement or
10 declaration in order to create a genuine dispute,[49] and Romelle has not provided one.
11 And though he concludes his submission with the statement, "[w]e are kindly asking for a
12 lawyer, more time or a jury that can hear this case,"[50] FRCP 56(d) permits the court to
13 grant more time to respond only "[i]f a nonmovant shows by affidavit or declaration that,
14 for specified reasons, [he] cannot present facts essential to justify [his] opposition," but
15 Romelle's brief falls far short of that threshold.[51]  And, unfortunately, this court lacks a
16 stable of gratis attorneys to appoint in ERISA cases for pro se plaintiffs like Romelle.

---

[47] ECF No. 17 at 1.
[48] *Id*. at 2.
[49] *See* Fed. R. Civ. P. 56(d) & (e).
[50] ECF No. 17 at 2.
[51] Fed. R. Civ. P. 56(d).

11

In sum, the Trust Funds have established that Emmanuel Environmental, Inc. breached its ERISA obligations, entitling the Trust Funds to an award of $90,653.84 against the company and Romelle Emmanuel, jointly and severally. So I grant summary judgment in favor of the Plaintiff Trust Funds and against Romelle Emmanuel in this amount.

**C.    The Trust Funds have established their entitlement to a default judgment against Emmanuel Environmental, Inc. that includes an award of attorneys' fees.**

The evidence above, the allegations in the complaint that were deemed true against Emmanuel Environmental, Inc. when default was entered against it,[52] and the additional proof attached to the motion for default judgment support the entry of default judgment against the company. Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain default judgment from the court if the clerk previously entered default based on defendant's failure to defend.[53] The court has discretion to enter a default judgment,[54] which is guided by the seven factors identified by the Ninth Circuit in *Eitel v. McCool*:

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[55]

---

[52] ECF No. 11.
[53] *See* Fed R. Civ. P. 55(b)(2).
[54] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).
[55] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

12

As default has already been entered in this case, this court must take all of the complaint's factual allegations as true, except those relating to damages, for which the court may take additional proof.[56]

      The Trust Funds have shown that the *Eitel* factors favor the entry of default judgment against the company. The company's failure to meet its obligations under the CBA or participate properly in this action suggests that the Trust Funds will suffer prejudice if default judgment is not entered because they will likely have no other recourse for recovery. The merits of the claims and sufficiency of the complaint also weigh in favor of the Trust Funds because they have robustly pled—and as demonstrated above, proven—their claims against the company. While the sum of money at stake in this action is a neutral factor here, and the strong public policy favoring decisions on their merits cuts against entry of a default judgment, the remaining factors support one. The default was not due to excusable neglect; rather, it was entered after the company was given ample opportunity to retain counsel to represent it as the law requires. And while Romelle's motion to dismiss reflects that he believes that the company wasn't under an obligation to make contributions for the work that forms the basis for this consolidated action, he hasn't shown that this dispute is material or could support any legal defense.

      So I find that the Trust Funds are entitled to a default judgment against Emmanuel Environmental, Inc. in the amount of an award of $90,653.84, based on the analysis of

---

[56] *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992); *see also* Fed. R. Civ. P. 55(b)(2).

13

the claims and evidence in section B above. I thus grant the request to set aside the Clerk of Court's entry of default judgment [ECF No. 20] and replace it with this award. And because the Trust Funds have indicated their intention to seek an award of attorneys' fees against Romelle in a separate, forthcoming motion, I deny the portion of the motion for default judgment against the company seeking attorneys' fees. That denial is without prejudice to the Trust Funds' ability to bring a single motion for an award of attorneys' fees and costs against all parties collectively.

## Conclusion

IT IS THEREFORE ORDERED THAT:

- Defendant Romelle Emmanuel's motion to dismiss **[ECF No. 17] is DENIED** and the motion to strike it **[ECF No. 18] is DENIED as moot**;

- The plaintiffs' motion for summary judgment against Defendant Romelle Emmanuel **[ECF No. 15] is GRANTED**.

- The plaintiffs' motion for clarification **[ECF No. 21] is GRANTED**; the default judgment against Emmanuel Environmental, Inc. at **[ECF No. 20] is VACATED and SET ASIDE**, and the motion for default judgment **[ECF No. 19] is REVIVED and then GRANTED in part and denied in part.**

- **The Clerk of Court is directed to ENTER FINAL JUDGMENT against Defendants Romelle Emmanuel and Emmanuel Environmental, Inc., jointly and severally, in the amount of $90,653.84 and CLOSE THIS CASE.**

14

- Any motion for attorneys' fees and costs must be filed within 20 days of this order.

_____
U.S. District Judge Jennifer A. Dorsey
March 21, 2025